IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| NOLAN P. MEINKE, et al. ) | CASE NO. 1:23 CV 1175 |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | JUDGE DONALD C. NUGENT |
| ) | |
| SHERIFF PHILIP R. STAMMITTI, et. al., ) | |
| ) | **MEMORANDUM OPINION** |
| Defendants. ) | **AND ORDER** |

I. Introduction

*Pro se* plaintiffs Nolan P. Meinke and Jose Romero filed this action under 42 U.S.C. §1983 against 22 defendants for purported civil rights violations that occurred during confinement as pretrial detainees at the Lorain County Jail. Plaintiffs make the following claims: denial of free speech; denial of exercise; misuse of force; denial of PREA; denial of due process; and retaliation. (Doc. No. 1). Plaintiffs seek declaratory and compensatory relief. For the following reasons, the complaint is dismissed.

II. Background

Nolan P. Meinke and Jose Romero are pretrial detainees currently confined at the Lorain County Jail. It appears that the majority of the claims arise from a purported peaceful protest staged by the inmates on March 7, 2023. According to the complaint, several inmates in the

housing area advised Corrections Officer Blevins that they wished to speak with an officer in charge. The inmates advised Blevins that they were non-violent and non-combative. When Blevins returned with Corrections Officer Fenelus, the inmates shared their concerns regarding the conditions of their confinement, including lack of recreation and a leaking roof. Thereafter, Officer Shea Adkisson (and his K9 partner), Sergeant Zsebik, Sergeant C. Irish, Sergeant Anthony Coonrod, Officer Hall, and Officer Grant entered the unit. The complaint alleges that Adkisson and his K9 partner, Hall, and C. Irish repeatedly assaulted Romero. (Doc. No. 1 at 5-6).

The complaint alleges that the following day, Meinke engaged in a verbal altercation with G. Irish, during which Meinke was placed in a restraint chair. Meinke claims that G. Irish threatened to "catch [him] in the shower." (*Id.* at 6). Meinke reported the threats, claiming they were a violation of PREA, and stated that "nothing has been done about these threats." The grievances were denied. (*Id.* at 7).

Meinke claims that he was written up for disobeying a direct order and for disruption of operations and a disciplinary hearing was held. He states that a non-impartial hearing officer conducted the hearing, he never received information regarding his requested witnesses, he did not receive a reply to his appeal, and he never received an explanation of the finding of guilt. Meinke received 20 days segregation for one charge and an additional 40 days for a separate charge, for which he alleges there was no hearing. (*Id.* at 7-8). The complaint also alleges that after the disciplinary hearing, he was separated from other inmates who participated in the protest, recreation was restricted, and Meinke was told to cuff up for asking Sergeant Frizell to not touch his legal work, he was placed in a restraint chair for 14 hours, and he was moved to a different cell. Meinke claims that during his time in the restraint chair, Captain Hammond and

Administrator Gordon "threatened and pushed [him] not to file or help inmates with a lawsuit." Afterwards, Meinke was placed "on chains and shackles for attempting to fight Defendant Frizell." (*Id.* at 8).

The complaint also alleges that the inmates have been denied access to the inside gym and outside area. The complaint states that inmates are required to use "day room time" as recreation time and the defendants have provided "old, rusty, and unsanitary" pull-up and sit-up stations in the day rooms "to deny actual recreation." According to the complaint, Defendants Bell, Schrenkel, Crum, and Gordon denied "all grievances" concerning the lack of recreation. (*Id.* at 4-5).

Finally, seemingly unrelated to the events set forth in the complaint, the plaintiffs appear to take issue with the jail's new "postcard only" incoming mail policy. According to the complaint, the defendants advised Meinke that the policy was implemented to reduce the time the officers spent searching incoming mail for contraband. Meinke states that he disagreed with the policy, explaining that not all mail is contraband. Meinke indicates that he filed a grievance, which was denied by Defendants Frizell, Crum, Gordon, and Hammond.

## III. Standard of Review

Plaintiff filed an application to proceed *in forma pauperis* (Doc. No. 2). The Court grants that application by separate order.

*Pro se* pleadings are liberally construed. *Boag v. MacDougall*, 454 U.S. 364, 365, 102 S. Ct. 700, 70 L. Ed. 2d 551 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). The district court, however, is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be

granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 328, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

The dismissal standard for Fed. R. Civ. P. 12(b)(6) articulated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) governs dismissal for failure to state a claim under § 1915(e)(2)(B). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). To state a plausible claim, a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 677-78; Fed. R. Civ. P. 8(a)(2). The plaintiff is not required to include detailed factual allegations, but he or she must provide more than an unadorned, the defendant-unlawfully-harmed-me accusation. *Iqbal*, 556 U.S. at 678.

In reviewing a complaint, the Court must construe the pleading in the light most favorable to the plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998) (citing *Sistrunk*, 99 F.3d at 197).

## IV. Discussion

As an initial matter, an adult litigant who wishes to proceed *pro se* must personally sign the complaint or petition to invoke the Court's jurisdiction. *Steelman v. Thomas*, 848 F.2d 194 (6th Cir. 1988); *Banks v. Valaluka*, No. 1:15 CV 1935, 2015 U.S. Dist. LEXIS 156558, * 23 (N.D. Ohio Nov. 18, 2015) (citing 28 U.S.C. § 1654). Upon review, the Court finds that Romero did not physically sign the complaint filed in this action. The Court is therefore without

jurisdiction to hear Romero's claims.

To the extent Meinke seeks to represent Romero's interests, there is no indication from the complaint that Meinke is an attorney licensed to practice law. And a *pro se* litigant may not represent anyone other than himself or herself. *See e.g. Gonzales v. Wyatt*, 157 F.3d 1016, 1021 (5th Cir.1998) ("[I]n federal court a party can represent himself or be represented by an attorney, but [he] cannot be represented by a nonlawyer"); *Johns v. County of San Diego*, 114 F.3d 874, 876 (9th Cir.1997) ("While a non-attorney may appear *pro se* on his own behalf, he has no authority to appear as an attorney for others than himself"); *see also Jackson v. Kment*, No. 13 CV 10819, 2016 U.S. Dist. LEXIS 33684, * 20 (E.D. Mich. Mar. 16, 2016) (finding Plaintiff lacks standing to seek injunctive relief on behalf of "his friends and family members"). Meinke therefore lacks standing to represent Romero's interests.

Accordingly, any purported claims concerning Romero, including the allegations of misuse of force and assault, will not be considered.

A. First Amendment

1. Free Speech

Plaintiff labels his first claim for relief as the "denial of free speech." He states that the defendants implemented a "postcard only" policy concerning incoming mail. According to the complaint, the defendants advised Plaintiff that the policy was implemented to reduce the time the officers spent searching incoming mail for contraband. Plaintiff states that he disagreed with the policy, explaining that not all mail is contraband. Plaintiff indicates that he filed a grievance, which was denied by Defendants Frizell, Crum, Gordon, and Hammond.

Plaintiff appears to argue that the new policy violated his First Amendment right to

receive mail. To that extent, this claim is dismissed. A prisoner has a First Amendment right to send and receive mail. *Hudson v. Palmer*, 468 U.S. 517, 547, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984). But there is no general right to unfettered mail delivery. A restriction on this right is valid "if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987); *Hudson*, 468 U.S. at 547 (the prisoner's First Amendment right to receive and send mail is "subject only to the institution's right to censor letters or withhold delivery if necessary to protect institutional security, and if accompanied by appropriate procedural safeguards"). When making that determination, federal courts must give considerable deference to prison officials. *Turner*, 482 U.S. at 89.

Plaintiff's conclusory presumption that this new policy would prevent inmates from receiving non-contraband mail is insufficient to state a claim for relief. *Iqbal*, 556 U.S. at 678. Moreover, it is not clear from the complaint that the policy was enforced against Plaintiff or that Plaintiff was actually harmed by this new policy. Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines*, 404 U.S. at 520-21; *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir.1991), the Court is not required to conjure unpleaded facts or construct claims against defendants on behalf of a *pro se* plaintiff. *See Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 437 (6th Cir. 2008). The complaint must give the defendants fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Lillard v. Shelby Cty. Bd. of Edn.*, 76 F.3d 716, 724 (6th Cir.1996) (citation omitted).

Accordingly, Plaintiff's First Amendment claim regarding the Lorain County Jail's new incoming mail policy is dismissed.

### 2. Retaliation

Plaintiff labels his final claim for relief as "retaliation." He claims that following his disciplinary hearing, he was separated from other inmates who had been involved in the purported peaceful protest, recreation was restricted, Defendant Frizell relocated Plaintiff to a different cell, and Defendants Frizell, Dowell, and Holbrook placed him in a restraint chair for 14 hours. (Doc. No. 1 at 8). Plaintiff states that Defendants Hammond and Gordon threatened him and "pushed [him] not to file or help inmates with a lawsuit." (*Id.*). Plaintiff also states that Frizell became impatient with him when he did not immediately begin packing up when instructed to do so, and he began grabbing Plaintiff's legal work and belongings "in a rude manner." According to Plaintiff, when he asked Frizell to not touch his legal work, Frizell told Plaintiff to "cuff up." And finally, Plaintiff admits that he was "placed [in] chains and shackles for attempting to fight ... Frizell." (*Id.*)

Retaliation, though it is not expressly referred to in the Constitution, is actionable because retaliatory actions may tend to chill an individual's exercise of First Amendment rights. *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972). To state a prima facie case for retaliation prohibited by the First Amendment, Plaintiff must establish: 1) he engaged in protected conduct; 2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) a causal connection exists between the first two elements– that the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

An adverse action is one that is "capable of deterring a person of ordinary firmness" from

exercising the constitutional right in question. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (quoting *Thaddeus-X*, 175 F.3d at 398). Plaintiff does not have to show actual deterrence. *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005). Even the threat of an adverse action can satisfy this element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct. *Hill*, 630 F.3d at 472; *Thaddeus-X*, 175 F.3d at 398. While this element is not an overly difficult one for Plaintiff to meet, "certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations." *Hill*, 630 F.3d at 472-73 (quoting *Thaddeus-X*, 175 F.3d at 398).

Here, it is not clear what protected conduct allegedly provoked the purported retaliatory actions. In support of his claim, Plaintiff states that the defendants "threatened and pushed [him] not to file or help inmates with a lawsuit." This statement, at best, demonstrates that the defendants wanted to prevent Plaintiff from engaging in protected conduct (i.e. filing a lawsuit). It does not suggest that Plaintiff has in fact helped other inmates file a complaint against Defendants. Defendants' actions cannot be construed as retaliation for protected conduct that has not yet occurred. In other words, Plaintiff has not alleged facts suggesting that the adverse action was motivated at least in part by the plaintiff's protected conduct. Moreover, by Plaintiff's own admission, he refused a direct order by a prison official, for which he was cuffed, and he attempted to fight one of the officers, for which he was placed in chains and shackles.

Plaintiff has therefore failed to state a First Amendment retaliation claim.

**B. Fourteenth Amendment**

**1. Denial of Exercise**

Plaintiff alleges that the inmates at the jail have been denied adequate recreation or

exercise. In support, he claims that the inmates have been denied access to the inside gym and outside area. He alleges that inmates are required to use "day room time" as recreation time, where the defendants have provided "old, rusty, and unsanitary" pull-up and sit-up stations. Plaintiff states that Defendants Bell, Schrenkel, Crum, and Gordon denied "all grievances" concerning the lack of recreation.

Plaintiff appears to allege the denial of recreation or exercise constituted cruel and unusual punishment under the Eight Amendment. While the Eighth Amendment protects inmates from cruel and unusual punishment, its protections apply specifically to post-conviction inmates. *See Barber v. City of Salem, Ohio*, 953 F.2d 232, 235 (6th Cir.1992). The Due Process Clause of the Fourteenth Amendment, however, operates to guarantee those same protections to pretrial detainees. *Thompson v. County of Medina, Ohio*, 29 F.3d 238, 242 (6th Cir.1994); *see Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir.1988) (stating that alleged violation of pretrial detainee's Eighth and Fourteenth Amendment rights is governed by the "deliberate indifference" standard). Plaintiff has not alleged sufficient facts to demonstrate that the defendants violated this right.

Prison officials may not deprive inmates of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981). The Supreme Court in *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991), set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments. A plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred. *Id.* Seriousness is measured in response to "contemporary standards of

decency." *Hudson v. McMillian*, 503 U.S. 1,8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992). Routine discomforts of prison life do not suffice. *Id.* Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will violate the constitution. *Id.* at 9. Plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. *Id.* Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error. *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986). Liability cannot be predicated solely on negligence. *Id.* A prison official violates the Eighth and Fourteenth Amendments only when both the objective and subjective requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

Here, Plaintiff fails to establish the objective component of his claim. The Eighth and Fourteenth Amendments are concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). And while "total or near total deprivation of exercise or recreational opportunity, without penological justification," violates an inmate's constitutional guarantees, *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir.1983), Plaintiff does not claim he was totally denied recreation. Rather, Plaintiff states that the pull-up and sit-up stations added to dayrooms do not meet the recreation needs of the inmates. This is not the type of extreme deprivation that invokes the Eighth or Fourteenth Amendment.

Moreover, even if Plaintiff had met the objective component, he fails to satisfy the subjective component–that the defendants were deliberately indifferent to the conditions of his confinement. An official acts with deliberate indifference when "he acts with criminal

recklessness," a state of mind that requires that the official act with conscious disregard of a substantial risk of serious harm. *Farmer*, 511 U.S. at 837. Here, Plaintiff states only that the defendants have added exercise equipment to the day rooms, and Defendants Bell, Schrenkel, Crum, and Gordon denied his grievances concerning the purported lack of exercise. There are no facts alleged in the complaint to reasonably suggest the defendants were aware of the purported inadequate recreation described and made a conscious decision to disregard a substantial risk that serious harm could befall the plaintiff. Additionally, responding to a grievance or otherwise participating in the grievance procedure is insufficient to trigger liability under 42 U.S.C. § 1983. *Shehee v. Luttrell*, 199 F.3d. 295, 300 (6th Cir. 1999); *Burnett v. Wilson*, No. 1:06 CV 2621, 2007 U.S. Dist. LEXIS 9193, *12 (Feb. 7, 2007) (defendants' involvement in grievances concerning the plaintiff's denial of recreation is insufficient to establish liability under Section 1983).

Accordingly, Plaintiff fails to state a claim for the purported denial of exercise.

### 2. PREA (Prison Rape Elimination Act)

Plaintiff claims that Defendant G. Irish threatened him. It appears that Plaintiff refused to go to lock down in segregation upon orders from Defendant Light. Consequently, Defendant Morris told Plaintiff to cuff up, and he was placed in the restraint chair in the booking cell. Upon arriving in the booking cell, Plaintiff and Defendant G. Irish began to argue and they each "traded insults back and forth." According to Plaintiff, G. Irish twice threatened Plaintiff, stating, "I'll catch you in the shower." (Doc. No. 1 at 6). Plaintiff states that Defendant Gordon then placed Plaintiff in protective isolation. Plaintiff indicated that he wanted "to file PREA over the threats." Thereafter, Plaintiff filed a grievance concerning the threats, which prison staff denied for "lack

of merit." (*Id.*). Plaintiff alleges that G. Irish's actions constituted a violation of his rights under PREA. (*Id.* at 9). He also claims that the failure of Defendants Gordon and Hammond to take disciplinary action against G. Irish "to curb threats of sexual abuse" constituted a violation of PREA and demonstrated deliberate indifference under the Fourteenth Amendment. (*Id.*).

To the extent Plaintiff alleges a violation of PREA, Plaintiff's claim fails. PREA "'seeks to compile data and statistics concerning incidences of prison rape and to adopt standards to combat the same, [it] does not confer upon [inmates] any extra rights outside of the normal prison grievance system.'" *Fisher v. Fed. Bur. of Prisons*, 484 F. Supp. 3d 521, 537 (N.D. Ohio 2020) (quoting *Jones v. Medlin*, No. CV 213-040, 2012 U.S. Dist. LEXIS 150457, 2012 WL 5025309, at *6 (S.D. Ga. Sept. 10, 2012), report and recommendation adopted, No. CV 312-040, 2012 U.S. Dist. LEXIS 149490, 2012 WL 4961683 (S.D. Ga. Oct. 16, 2012)). Numerous courts, including the Northern District of Ohio, have therefore held that PREA does not create a private cause of action that can be brought by an individual plaintiff. *See Fisher* at 537; *Simmons v. Solozano*, No. 3:14CV-P354-H, 2014 U.S. Dist. LEXIS 129249, 2014 WL 4627278, at *4 (W.D. Ky. Sept. 16, 2014) [**26] (citing cases); *see also Peterson v. Burris*, No. 14-cv-13000, 2016 U.S. Dist. LEXIS 853, 2016 WL 67528, at *2 (E.D. Mich. Jan 6, 2016) ("Numerous [c]ourts that have addressed this issue have determined that PREA provides no private right of action to individual prisoners.") (citing cases); *Montgomery v. Harper*, No. 5:14CV-P38-R, 2014 U.S. Dist. LEXIS 114727, 2014 WL 4104163, at *2-3 (W.D. Ky. Aug. 19, 2014). Because PREA does not provide Plaintiff with a private right of action, any claim concerning an alleged violation of PREA fails.

Plaintiff also appears to allege that Gordon, as jail administrator, and Hammond, as

-12-

director of corrections, failed to take corrective action against G. Irish for his purported "threats of sexual abuse" and this failure constitutes deliberate indifference. To the extent Plaintiff claims that these supervisors are liable for G. Irish's alleged misconduct, Plaintiff's claim fails.

A plaintiff cannot establish the liability of any defendant under Section 1983 absent a clear showing that the defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. *Rizzo v. Goode*, 423 U.S. 362, 371, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976). *See also Heyerman v. Cnty. of Calhoun*, 680 F.3d. 642, 647 (6th Cir. 2012) (noting that "[p]ersons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior"); *Murphy v. Grenier*, 406 Fed. App'x. 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish Section 1983 liability"). Individual liability must therefore "be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others, either defendants or non-defendants." *Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991).

Supervisors cannot be liable for a Section 1983 claim "premised solely on a theory of respondeat superior, or the right to control employees." *Heyerman*, 680 F.3d at 647. The Sixth Circuit has held that to be liable under Section 1983, a supervisor must at least implicitly authorize, approve, or knowingly acquiesce in the unconstitutional conduct of the offending officers. *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982). A failure to supervise, control, or train an individual is not actionable "unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999) (quoting *Hays*, 668 F.3d at 874). Therefore, "a supervisor cannot be held liable simply because he or she was charged with overseeing a

subordinate who violated the constitutional rights of another." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (citing *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006). Rather, "supervisory liability requires some 'active unconstitutional behavior' on the part of the supervisor." *Peatross*, 818 F.3d at 241 (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)).

Here, Plaintiff's claims against Gordon and Hammond are based solely on the defendants' response to Plaintiff's grievances or the defendants' failure to remedy alleged unconstitutional behavior. Plaintiff fails to make any factual allegations that would support even an inference that these defendants directed or participated in the alleged misconduct. Plaintiff's supervisory liability claims against Gordon and Hammon are therefore dismissed for failure to state a plausible claim.

### 3. Due Process

Plaintiff alleges that Defendants' actions concerning his disciplinary hearing violated his due process rights. He claims that he never received a copy of the conduct report or was notified of the charges, the hearing officer was not impartial, he was never advised whether his requested witnesses were called or the substance of their testimony, he was found guilty with no explanation or finding of facts, and he never received a reply to his appeal. Plaintiff states that he received 20 days segregation for one write-up and an additional 40 days segregation for "another write-up with no hearing at all." (Doc. No. 1 at 7-8).

The Fourteenth Amendment's Due Process Clause protects individuals against the deprivation of life, liberty, or property without due process. U.S. Const. amend. XIV; *Damron v. Harris*, No. 21-3877, 2022 U.S. App. LEXIS 20963, at *6 (6th Cir. July 28, 2022). "[T]hose

[individuals] who seek to invoke its procedural protections must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005).

Prisoners have narrower liberty interests than other citizens as "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 485, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995). The question of what process is due is therefore answered only if the inmate establishes a deprivation of a constitutionally protected liberty or property interest. *Wilkinson*, 545 U.S. at 221.

The Due Process Clause, standing alone, confers no liberty interest in freedom from state action taken within the sentence imposed. *Sandin*, 515 U.S. at 480. "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.* at 485. "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221. A prison disciplinary action does not implicate a liberty interest requiring due process safeguards unless the punishment imposed will "inevitably" affect the duration of an inmate's sentence, such as loss of good time credit, or inflict an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 487; *Superintendent, Mass. Corr. Inst., Walpole, v. Hill*, 472 U.S. 445, 454, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985). While assignment to a super-maximum security prison, for example, triggers due process protections, *Wilkinson*, 545 U.S. at 224, the Supreme Court considered temporary placement in segregation to be "within the range of confinement to be normally

expected for one serving an indeterminate term of 30 years to life," *Sandin*, 515 U.S. at 487.

Here, there is no indication Plaintiff was sanctioned with the loss of good time credits. Plaintiff alleges, rather, that he received 20 days in segregation on one conduct report and an additional 40 days on a second conduct report. The Sixth Circuit has found no liberty interest in much longer periods of time in administrative segregation. *See Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998) (two years of segregation while inmate was investigated for murder of prison guard in riot was not atypical or a significant hardship in relation to prison life); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997) (finding no atypical or significant hardship in inmate's placement in segregation for one year after inmate was found guilty of possession of illegal contraband and assault and when reclassification was delayed due to prison crowding); *Bradley v. Evans*, No. 98-5861, 2000 U.S. App. LEXIS 22403, 2000 WL 1277229, at *7 (6th Cir. Aug. 23, 2000) (and numerous cases cited therein in support of holding that placement for 14 months in administrative segregation did not impose an atypical or significant hardship on the prisoner); *Collmar v. Wilkinson*, No. 97-4374, 1999 U.S. App. LEXIS 22803, 1999 WL 623708, at *3 (6th Cir. Aug.11, 1999) (30 days in security control, 14 days in disciplinary control and six to eight months in administrative control did not constitute an "atypical hardship" under *Sandin*); *see also Watson v. Fed. Bureau of Prisons*, No. 4:07 CV 2218, 2007 U.S. Dist. LEXIS 80563, *4-5 (N.D. Ohio Oct. 31, 2007) (finding 60 days spent in administrative detention did not impose an atypical and significant hardship).

Accordingly, Plaintiff's 60-day total confinement in disciplinary segregation does not impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. His placement in segregation was therefore not sufficient to trigger procedural due process protections, and consequently, Plaintiff fails to state a plausible

due process claim.

**V. Conclusion**

For the foregoing reasons, this action is dismissed pursuant to 28 U.S.C. §1915(e). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this decision may not be taken in good faith.

**IT IS SO ORDERED**.

*/s/ Donald C. Nugent*
DONALD C. NUGENT
United States District Judge

DATED: October 11, 2023